## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CLINTON T. KERR,

     Plaintiff,

v.                                              Civ. No. 16-799 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

     Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for A Rehearing with Supporting Memorandum" ("Motion"), filed on December 5, 2016. ECF No. 15. The Commissioner responded on February 6, 2017. ECF No. 17. Plaintiff replied on February 21, 2017. ECF No. 18. Having meticulously reviewed the briefing and the entire record, the Court concludes that the Commissioner followed the correct legal standards and supported her decision with substantial evidence. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.    PROCEDURAL BACKGROUND

On March 24, 2015, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning October 10, 2014. AR 210-22. Plaintiff alleged disability due to a broken right leg, diabetes, attention deficit hyperactivity disorder, and eye problems. AR 210-22. Plaintiff's applications were denied initially on May 28, 2015 and upon reconsideration on September 9, 2015. AR 78-79, 138-39. Plaintiff requested a hearing before an ALJ, which was held on March 16, 2016, before Administrative Law Judge ("ALJ") Eric Weiss. AR 158-59. Plaintiff testified at the hearing, along with Leslie J. White, an

impartial vocational expert ("VE").  AR 40-77.  Michelle Baca, an attorney, represented Plaintiff at the hearing. AR 19, 40.

On April 27, 2016, ALJ Weiss issued his decision finding Plaintiff not disabled and therefore not entitled to either DIB or SSI.  AR 16-31.  Plaintiff requested review by the Appeals Council, which was denied on June 14, 2016, making the ALJ's decision the Commissioner's final decision for purposes of this appeal.  AR 1-3.  Through new counsel, Francesca J. MacDowell, Plaintiff timely appealed to this Court.  ECF No. 1.

## II.    APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).   "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.  Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017).

At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is able to perform his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    SUMMARY OF ARGUMENTS

Plaintiff advances three arguments with several sub-arguments in favor of reversing and remanding. First, Plaintiff argues the ALJ erred by failing to include moderate limitations assessed by consultative examiner B. Rudnick, M.D., in the RFC. Pl.'s Mot. 5-8. Second, Plaintiff contends the ALJ's RFC is contrary to law and not supported by substantial evidence.

Pl.'s Mot. 8-19. Specifically, Plaintiff argues: (1) the ALJ's finding that Plaintiff can stand and walk for six hours is not supported by substantial evidence; (2) the ALJ legally erred by not including a vision limitation in the RFC; (3) the ALJ legally erred by failing to include Dr. Rudnick's assessed moderate limitations, which Plaintiff argues are supported by other evidence; (4) the ALJ legally erred by failing to take into account the combined effect of Plaintiff's limitations; and (5) the ALJ legally erred by relying on improper factors, i.e. Plaintiff's noncompliance with prescribed treatment and Plaintiff's daily activities. Pl.'s Mot. 8-19. Finally, Plaintiff argues the ALJ erred by adopting the VE's testimony, which Plaintiff contends conflicted with Dr. Rudnick's assessed limitations. Pl.'s Mot. 19-22.

The Commissioner first responds that, because the ALJ's RFC was consistent with Dr. Rudnick's narrative opinion, the ALJ did not commit reversible error. Def.'s Resp. 5-6. Second, the Commissioner argues the ALJ's RFC, including the ALJ's determination of Plaintiff's non-severe impairments, is supported by substantial evidence. Def.'s Resp. 7-12. Regarding the VE testimony, the Commissioner disputes whether the ALJ was required to do more than ask the VE if his testimony conflicted with the DOT and denies there is a conflict between the RFC and the VE's testimony. Def.'s Resp. 12-18.

## IV. ALJ'S DECISION

On April 27, 2016, the ALJ issued his decision finding Plaintiff not disabled. AR 16-31. In so doing, the ALJ followed the five-step sequential evaluation. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. AR 20. At step two, the ALJ determined Plaintiff has the following severe impairments: right femur fracture status post open reduction internal fixation; right ankle fracture; right knee instability; mild bilateral knee osteoarthritis; attention hyperactivity disorder; anxiety; and a bipolar

disorder, not otherwise specified. AR 20. The ALJ acknowledged Plaintiff has several other impairments, but found them not severe. AR 20-21. These include: diabetes melitis; proliferative diabetic retinopathy in both eyes following laser surgery; hypertension; gastroesophageal reflux disease; and amphetamine use in remission. AR 21.

At step three, the ALJ determined Plaintiff's impairments, both singly and in combination, do not meet or medically equal the severity of a Listing impairment. AR 22. At this step, the ALJ found Plaintiff has only mild restrictions in daily living and social functioning, and moderate limitations with regard to concentration, persistence or pace. AR 23. Regarding activities of daily living, the ALJ discussed evidence from Plaintiff's friend Dana Romero, Plaintiff's own statements, and the opinion of state agency consultant B. Rudnick, M.D., that Plaintiff has only mild limitations in this area of functioning. AR 22. Similarly, the ALJ considered evidence of Plaintiff's social functioning from Ms. Romero, Plaintiff's own reporting, and notes by Mauricio Tohen, M.D., that Plaintiff exhibited a "cheerful mood and a full affect." AR 23. As for persistence and pace, the ALJ again relied on Ms. Romero's report, as well as notes from Drs. Tohen and Rudnick. AR 23.

Prior to proceeding to step four, the ALJ found Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). AR 23. The ALJ found Plaintiff capable of lifting 20 pounds occasionally and 10 pounds frequently, as well as pushing and pulling the same. AR 23. According to the ALJ, Plaintiff can both stand and walk for up to six hours in an eight hour work-day while taking normal breaks. Plaintiff may frequently stoop, but only occasionally climb ramps or stairs, balance, kneel, crouch, or crawl, and never climb ladders, ropes, or scaffolds. AR 23. Plaintiff must also avoid more than occasional exposure to extreme cold, heat, and unprotected heights. AR 23. Finally, the ALJ found Plaintiff capable of

understanding, remembering, and carrying out simple instructions and making commensurate work-related decisions, adjusting to routine changes in work setting, frequently interacting with supervisors, co-workers, and the public, and maintaining concentration, persistence, and pace for two hours at a time with normal breaks. AR 23.

The ALJ based his RFC on Plaintiff's statements as well as the objective medical evidence. AR 24. The ALJ began his discussion with the events of October 10, 2014, when Plaintiff injured his knee after falling off a mechanical bull. AR 24. Plaintiff was hospitalized for four days, during which he underwent open reduction internal fixation of his right femur fracture. AR 24. On November 11, 2014, examination showed no evidence of either a superficial or deep obstruction. AR 24. Then, on January 5, 2015, Plaintiff went to the emergency room complaining of right ankle pain after falling at Wal-Mart. AR 24. The ER attending noted tenderness up and down Plaintiff's leg and ankle, and x-rays showed an ankle fracture. AR 25. Plaintiff was discharged with medication and instructions to use a walker. AR 25. January 2015 x-rays of Plaintiff's femur showed no acute abnormalities. AR 25.

The ALJ next discussed treatment records from Michael W. Foutz, M.D. AR 25. Plaintiff saw Dr. Foutz from November 13, 2014, through January 8, 2015, primarily regarding his diabetes. Plaintiff presented with complaints of left and right leg swelling, difficulty sleeping, urinary retention, and both low and high blood sugar readings. AR 25. On November 13, 2014, Dr. Foutz diagnosed Plaintiff with cellulitis, an abscess on his foot, and diabetes. AR 25. On November 24, 2014, Plaintiff's blood pressure decreased on a diuretic and the redness on his foot had resolved. AR 25. Further records show Plaintiff reported feeling better despite problems with his eye, good results with Clonazepam, and no physical abnormalities on examination. AR 25.

Next, the ALJ discussed medical evidence of Plaintiff's eye impairment. The ALJ noted Plaintiff's long history of bilateral proliferative retinopathy and chronic vitreous hemorrhage in his right eye. AR 25. Once again, the ALJ noted Plaintiff's subjective complaints, treatment, and results. AR 25-26. Following surgery, Plaintiff's uncorrected vision in his right eye improved from 20/200 to 20/100, and by October 20, 2015, Plaintiff suffered only mild vitreous hemorrhage in his right eye. AR 26.

The ALJ then considered records from Abhishek Ahuja, M.D., for treatment rendered from July 2014 to October 2015. AR 26. Plaintiff presented with high blood sugar and right leg, knee, and ankle pain. AR 26. On April 2, 2015, Dr. Ahuja performed a physical examination and noted no acute distress or pain with movements at the knee. AR 26. On October 2, 2015, Plaintiff walked with a normal gait and without an apparent limp, and he reported medication helped his diabetes and that he was not suffering side effects. AR 26.

Finally, the ALJ discussed treatment notes from Pamela A. Burks, PA. AR 26. Plaintiff presented with right lateral knee pain, a popping sensation over his distal lateral femur, and intermittent giving out in his right knee. AR 26. Plaintiff reported his pain was severe and worse in the cold or when walking, but better on anti-inflammatory pain medications. AR 26. Ms. Burks, on examination, noted palpable hardware, some crepitus over the lateral screw in Plaintiff's leg, and less strength in his right leg than left. AR 26. Further, Plaintiff had a full range of motion in his right knee from 0 to 125 degrees, no pain over his joint lines, negative anterior and posterior drawer tests, and negative McMurray's test, among other findings. AR 26. X-rays taken the same day showed Plaintiff's knee showed stable hardware and a "proud" medial screw. AR 26. Ultimately, Ms. Burks diagnosed Plaintiff with status post open reduction and

internal fixation of the right femur with right lateral knee pain and knee instability and recommended an MRI of Plaintiff's right knee. AR 26.

The ALJ then turned to evidence of Plaintiff's mental impairments. On December 15, 2014, Plaintiff and his then-girlfriend went to counseling at Community Outreach Counseling. AR 27. Plaintiff stated he had a history of methamphetamine use and his girlfriend said she felt Plaintiff also had a drinking problem. AR 27. Plaintiff reported a litany of other problems, including difficulty paying close attention to detail, inability to maintain focus for long periods of time, failure to respond when spoken to, difficulty following through on instructions or finishing tasks, and several unstable emotions. AR 27. The examining therapist diagnosed Plaintiff with severe attention deficit hyperactivity-disorder with combined presentation, severe stimulant use disorder in early remission, and moderate alcohol use disorder. AR 27. Consequently, the therapist recommended Plaintiff undergo outpatient counseling and medication management for one year.

On March 9, 2015, Plaintiff went to the emergency room, reporting anxiety and suicidal ideations. AR 27. Plaintiff stated he felt anxious and aggressive, stating he wanted to go to a bar and pick a fight with someone bigger than him and thought about "death by cop." AR 27. Plaintiff indicated he had been prescribed several medications but stopped taking them because he did not like the way they made him feel. AR 27. On examination, Mario Martinez, NP, noted Plaintiff's blood pressure was high, and testing showed Plaintiff was likely suffering from chronic anemia and high blood sugar. AR 27. Mr. Martinez noted Plaintiff appeared anxious but showed a normal thought process and content, intact cognitive functioning, and was neither suicidal nor a danger to himself. AR 27. Mr. Martinez assessed Plaintiff with suicidal ideations, along with medication withdrawal, hypertension, and diabetes. AR 27. In the end, Mr. Martinez

restarted Plaintiff on some of his medications and recommended he be transferred to Safe Haven Behavioral Hospital, a psychiatric institution.  AR 29.

On March 10, 2015, Plaintiff went to Safe Haven, complaining of depression, suicidal ideations, and pain in his right leg that he rated 2/10.  AR 29.  Physical examination showed high blood pressure, tachycardia, pitting edema in both lower extremities, light ecchymosis on the right knee and left leg, and a scar from Plaintiff's knee surgery.  AR 29.  Plaintiff reported "everything was going well and his mood was fine when he was on his medications, [but] he stopped taking them about six days" before going to Safe Haven.  AR 29.  Plaintiff exhibited a slight limp, irritability, racing thoughts, and reduced insight, judgment, and impulse control, but was also alert, fully oriented, appropriately groomed, and cooperative with a full affect, clear, unpressured speech, goal-directed thought process, and had no aggressive or suicidal ideations.  AR 29.  At that time, Plaintiff appeared capable of completing his daily activities.  AR 29.  Ultimately, Plaintiff was diagnosed with bipolar disorder, not otherwise specified, with a recent manic episode; combined-type attention deficit hyperactivity disorder; severe amphetamine use disorder in early remission; and a moderate history of tobacco use disorder.  AR 29.

The next day, March 11, Katherine Roman, M.D., psychiatrically evaluated Plaintiff.  Dr. Roman noted Plaintiff reported racing thoughts but no aggressive or suicidal thoughts.  AR 29.  Dr. Roman noted Plaintiff's limp, but otherwise documented Plaintiff's alertness, appropriate grooming, good eye contact, good mood, full affect, goal directed thought process, and improving insight and judgment.  AR 29.  Dr. Roman noted similar observations over the next four days. AR 29.  On March 14, 2015, Safe Haven discharged Plaintiff with instructions to take his medication and follow up with Community Outreach Counseling Center.  AR 29.  Although no abnormalities were noted on mental status examination on the day of Plaintiff's discharge,

Plaintiff was assessed a global assessment of functioning ("GAF") score of 50, indicating serious symptoms or serious social, occupation, or educational functioning impairments. AR 29.

Next, the ALJ discussed Plaintiff's treatment at the University of New Mexico Health Sciences Center from August 17, 2015, to February 15, 2016. AR 28. Plaintiff presented complaining of depression, distraction, racing thoughts, anxiety, and high energy. AR 28. On August 17, 2015, Dr. Tohen reported Plaintiff was fully oriented with normal and intact thought processes, and that Plaintiff denied most symptoms of depression, including problems with sleep or appetite. AR 28. On August 26 and September 26, 2015, Swala K. Abrams, M.D., described Plaintiff as friendly, energetic, and cooperative, with linear, organized, logical thought process, no suicidal or homicidal ideations, fair insight and judgment, and adequate cognition. AR 28. Dr. Abrams assessed Plaintiff as having a GAF of 60, indicating only moderate symptoms or impairments. AR 28.

On February 8, 2016, Plaintiff returned to Dr. Abrams after having spent two months in Idaho with his ex-girlfriend and their two children. AR 28. Plaintiff was irritable, primarily because he learned his girlfriend was seeing someone else. AR 28. Dr. Abrams indicated Plaintiff's ADHD continued to improve, though he remained frustrated by life stressors. AR 28. On follow-up one week later, Plaintiff appeared more depressed than usual and admitted feeling depressed because his girlfriend was seeing someone else. AR 28. Plaintiff felt he would likely recover from being "in a rut." AR 28. Here again, Plaintiff exhibited normal speech, thought process, insight, judgment, and cognition. AR 28. Notably, on both February 1 and 8, 2016, Dr. Abrams assessed Plaintiff with a GAF of 65, indicating only mild symptoms and impairments. AR 28, 30.

Having exhaustively discussed the evidence, the ALJ concluded that, overall, the medical evidence did not support Plaintiff's subjective statements and allegations of disability. AR 30. The ALJ supported this determination with several specific citations to the record. First, the ALJ noted Plaintiff's reports that his conditions improved with medication. AR 30. Further, on March 10, 2015, Plaintiff complained of only mild, 2/10 pain in his right knee, and on February 8, 2016, Plaintiff told Ms. Burks that his symptoms improved with anti-inflammatory and pain medications. AR 30. At the hearing, Plaintiff testified he is able to stand, that he only limps if he walks too far, and that he does not take pain medication. AR 30.

The ALJ also cited Dr. Ahuja's observation that Plaintiff appeared well, was not in acute distress, and had no pain with movement in his knee, as well as a normal mood, affect, and insight. AR 30. On August 17, 2015, Plaintiff exhibited normal muscle tone and strength, as well as normal gait and station. AR 30. On October 2, 2015, Dr. Ahuja reported Plaintiff had a normal gait without an apparent limp and was again in no acute distress with normal mood, affect, and insight. AR 30. On February 29, 2016, Ms. Burks examined Plaintiff and found a full range of motion in Plaintiff's right knee and no pain on either joint line. AR 30.

Regarding Plaintiff's mental condition, the ALJ noted Plaintiff's consistent reports that his medication worked, that Plaintiff regularly and consistently showed normal mood, affect, and insight, and that Plaintiff's condition improved to the point that Dr. Abrams assigned Plaintiff a GAF score of 65. AR 30-31. The ALJ found that Plaintiff's history of noncompliance with his medication and prescribed treatment weighed against his claim of disability. AR 31. The ALJ noted that Plaintiff was referred to Community Outreach Counseling for outpatient counseling and medication management, but that the record failed to show that Plaintiff ever returned. AR

31. The ALJ also highlighted the repeated instances Plaintiff voluntarily stopped taking his medications. AR 31.

Furthermore, the ALJ determined that the record showed Plaintiff was not as limited in his daily activities as he alleged. On May 7, 2015, Plaintiff's friend Dana Romero reported Plaintiff can lift up to 20 pounds, care for his children, take care of his personal needs, go out alone and socialize with others, follow spoken and written instructions, and handle changes in routine. AR 31. On August 3, 2015, Plaintiff himself reported being able to care of his pets and himself, prepare meals, perform household chores, go out alone and socialize, and get along with others. AR 31. Finally, the ALJ found compelling the fact that Plaintiff sought to go back to work driving trailers. AR 31. Plaintiff testified he worked at a hauling company before his alleged disability, and while that work did not qualify as substantial gainful activity, the ALJ thought it probative that Plaintiff would seek to return to it. AR 31-32.

As for assigning weight, the ALJ assigned limited weight to state agency consultants Edward S. Bocian, M.D., and H. Kushner, M.D., because he thought the evidence "clearly" precluded their assessments of Plaintiff's ability to carry heavier weights. AR 32. However, the ALJ assigned significant weight to state agency psychological consultants Cathy Simutis, Ph.D., and B. Rudnick, M.D., since their opinions were well-supported by Plaintiff's treatment records. AR 32. Finally, the ALJ assigned limited weight to Ms. Romero's report, since as Plaintiff's friend she is not a disinterested third party. AR 32.

At step four, the ALJ determined Plaintiff is unable to perform his past relevant work as a laborer, forklift driver, delivery driver, or warehouse worker. AR 32. However, at step five, the ALJ concluded that Plaintiff is able to perform other jobs that exist in significant numbers in the national economy. AR 33. The ALJ relied on VE testimony that Plaintiff is able to perform the

jobs of ticket taker, marker, and office helper.  AR 33. Pursuant to Social Security Ruling 00-4p,

the ALJ found the VE's testimony consistent with the Dictionary of Occupation Titles ("DOT").

Having decided that Plaintiff can perform enough other jobs, the ALJ found Plaintiff not

disabled and therefore not entitled to either DIB or SSI.  AR 34.

V.    ANALYSIS

A.  Assessment of Dr. Rudnick's Opinion

Plaintiff first alleges the ALJ erred by ignoring moderate limitations assessed by Dr.

Rudnick, a psychological consultative examiner ("CE").  Pl.'s Mot. 5-8. Plaintiff alleges Dr.

Rudnick failed to explain why his assessed moderate limitations "disappeared" from his narrative

conclusions and that the ALJ legally erred by relying on Dr. Rudnick's conclusions only.  Pl.'s

Mot. 8. The Commissioner responds that the ALJ permissibly relied on Dr. Rudnick's narrative

assessment and was not required to adopt Dr. Rudnick's moderate limitations.  Def.'s Resp. 5-7.

Dr. Rudnick completed a Mental Residual Functional Capacity Assessment ("MFRCA")

as a CE at the Reconsideration level.  AR 117-19.  First, Dr. Rudnick opined that Plaintiff is

moderately limited in his ability to understand and remember detailed instructions.  AR 117.

Under "[e]xplain in narrative form the presence and degree of specific understanding and

memory capacities and/or limitations," Dr. Rudnick wrote that Plaintiff "can understand and

remember uncomplicated instructions."  AR 117.  Regarding Plaintiff's sustained concentration

and persistence, Dr. Rudnick found Plaintiff moderately limited in his ability to carry out

detailed instructions, maintain attention and concentration for extended periods, complete a

normal workday and workweek without interruption from his psychological symptoms, and

perform at a consistent pace without an unreasonable amount or length of rest periods.  AR 118.

However, in the narrative portion, Dr. Rudnick wrote only that Plaintiff "can persist, attend, and

maintain acceptable pace for a normal work schedule." AR 118. In areas of social interaction, Dr. Rudnick indicated Plaintiff is moderately limited in his ability to appropriately interact with the public, accept instructions, and respond to criticism from supervisors. AR 118. Despite this annotation, Dr. Rudnick opined that Plaintiff "can accept supervision and engage in routine work task related interpersonal interactions." AR 118. Finally, Dr. Rudnick assessed Plaintiff as moderately impaired in his ability to be aware of normal hazards and take appropriate precautions. AR 119. In narrative form, Dr. Rudnick wrote if Plaintiff's ADHD "symptoms are present in a work setting, then [Plaintiff] should avoid inherently hazardous work activities without appropriate safeguards and supervision." AR 119.

As described earlier, the ALJ discussed Dr. Rudnick's findings and gave his opinions significant weight. AR 22-23, 32. At step three, the ALJ noted Dr. Rudnick's findings of moderate limitations. AR 22-23. But the ALJ did not expressly incorporate these nonexertional limitations into the RFC. AR 23. Instead, the ALJ limited Plaintiff to: understanding, remembering, and carrying out simple instructions; maintaining concentration, persistence, and pace for two hours at a time during the workday with normal breaks; interacting frequently with supervisors, co-workers, and the public; and avoiding more than occasional exposure to hazards such as extreme temperatures and unprotected heights. AR 23. Thus, as the parties agree, the ALJ appears to have adopted Dr. Rudnick's narrative without incorporating the bare findings of moderate limitations.

Tenth Circuit law is clear that an ALJ need not incorporate verbatim assessed moderate nonexertional limitations if the ALJ incorporates the functional aspects of a claimant's nonexertional limitations. *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016). In *Smith*, a CE assessed the claimant with several moderate nonexertional limitations. *Id.* at 1268. However,

the CE ultimately opined that the claimant was able to "engage in work that was limited in complexity" and could "manage social interactions that were not frequent or prolonged." *Id*. In turn, the ALJ found the claimant could not "engage in face-to-face contact with the public" and could "manage social interactions that were not frequent or prolonged." *Id*. at 1269. Because the ALJ "incorporated [the claimant's] limitations by stating how the claimant was limited in the ability to perform work-related activities," the Tenth Circuit rejected the claimant's argument "that the ALJ should have assessed additional nonexertional impairments." *Id*.

Notably, in *Smith*, the claimant questioned how the ALJ incorporated the CE's "numerous moderate limitations." *Id.* at 1269 n.2. According to the Tenth Circuit, "this is the wrong question." *Id*. Rather, the question is whether the ALJ incorporated the CE's "opinion on residual functional capacity, not her notations of moderate limitations." *Id*. "This does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated" but not explained by the CE. *Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015) (unpublished). If a CE's narrative fails to describe the effects of the noted limitations or contradicts the noted limitations, "the MRFCA cannot properly be considered part of substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 Fed. Appx. 616, 619 (10th Cir. 2015) (unpublished). Therefore, the analysis is twofold: first, did the CE adequately describe or explain the noted limitations? *See id.*; *Smith*, 821 F.3d at 1269; *Paulsen v. Colvin*, 665 Fed. Appx. 660, 666-67 (10th Cir. 2016) (unpublished). And second, did the ALJ adequately incorporate the CE's narrative description of a claimant's limitations? *See Smith*, 821 F.3d at 1269; *Lee*, 631 Fed. Appx. at 542; *Chavez v. Colvin*, 654 Fed. Appx. 374, 375 (10th Cir. 2016) (unpublished memorandum opinion).

Mindful of its standard of review and the admonition that it should not substitute its opinion for the Commissioner's, the Court concludes the ALJ followed the correct legal standards and supported his determination with substantial evidence. First, though Dr. Rudnick indicated Plaintiff has several moderate limitations, Dr. Rudnick explained those limitations in narrative format in terms of what Plaintiff can still do, just as precedent requires. AR 117-19. The ALJ then incorporated those functional limitations into an RFC limiting Plaintiff to work that would involve complying with simple instructions, concentrating and persisting for two hours at a time, and avoiding more than occasional exposure to hazards. AR 23. Here again, that is all the law required the ALJ to do. The Court finds both that Dr. Rudnick incorporated the moderate limitations into his narrative conclusions and that the ALJ incorporated those conclusions into the RFC. Accordingly, the ALJ did not legally err in assessing and weighing Dr. Rudnick's opinion.

**B. Whether the ALJ's RFC was legally sound and supported by substantial evidence**

Plaintiff next argues that, in formulating the RFC, the ALJ committed several legal errors and failed to support his decision with substantial evidence. Plaintiff's argument here contains five sub-arguments: (1) the ALJ's finding that Plaintiff can stand and walk for six hours is not supported by substantial evidence; (2) the ALJ legally erred by not including a vision limitation in the RFC; (3) the ALJ legally erred by failing to include Dr. Rudnick's assessed moderate limitations, which Plaintiff argues are supported by other evidence; (4) the ALJ legally erred by failing to take into account the combined effect of Plaintiff's limitations; and (5) the ALJ legally erred by relying on improper factors, including Plaintiff's noncompliance with prescribed treatment and Plaintiff's daily activities. The Court will address each in turn under the standard of review discussed *supra* Section II.A.

1. **Whether the ALJ's finding that Plaintiff can walk and stand for six hours in a workday is supported by substantial evidence**

First, Plaintiff contends the ALJ's finding that Plaintiff can walk and stand for six hours is not supported by substantial evidence. In so arguing, Plaintiff cites the fact that he injured his knee in October 2014, which required surgery, and fractured his ankle in January 2015. Pl.'s Mot. 9. In support of his claim he cannot stand or walk for long periods of time, Plaintiff cites evidence of his knee pain, his limp, swelling in his legs, and that his leg gives out. Pl.'s Mot. 9-10 (citing AR 334-35, 377, 451, 453). Plaintiff also refers to his examination and x-rays taken in February 2016. Pl.'s Mot. 10 (citing AR 598-99).

As discussed *supra* in Section IV, the ALJ thoroughly reviewed the evidence, including the evidence Plaintiff cites. AR 24-29. The ALJ relied on several pieces of evidence, including: on March 10, 2015, Plaintiff complained of pain at 2 out 10; that his leg felt better with anti-inflammatory and pain medications; that Plaintiff's leg had normal muscle tone and strength and that he had normal gait and station on August 17, 2015; and that Plaintiff's physical examination in February 2016 showed stable knee hardware and no pain in his joint lines. AR 30. Further, the ALJ cited Plaintiff's own testimony that he is not having problems with this leg or ankle, is able to stand, and is not taking pain medication. AR 30; *see* AR 55-56. The ALJ also cited Plaintiff's alert and cooperative disposition, as well as that Plaintiff was not in acute pain during his doctor's visits. AR 30.

Comparing the evidence Plaintiff cites and the evidence the ALJ relied on, the Court concludes the ALJ supported his determination with substantial evidence. The ALJ supported his conclusion with citations throughout the record, from when Plaintiff first injured his knee to his most recent examinations prior to the hearing. In this case, the ALJ relied on more than enough evidence a reasonable mind might accept as adequate to support a conclusion. *See Langley*, 373

F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. Although Plaintiff cites evidence supporting his claim, he does not cite evidence that overwhelms the ALJ's conclusion. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Plaintiff accuses the ALJ of supporting his conclusion "only by irrelevant citations to [Plaintiff's] cheerful affect and alert and cooperative disposition." Pl.'s Mot. 11. Though the ALJ did cite Plaintiff's disposition, the ALJ relied on much more than Plaintiff's attitude or demeanor. The Court therefore finds the ALJ's determination that Plaintiff can stand and walk six hours in an eight hour workday to be supported by substantial evidence.

### 2. Whether the ALJ erred by not including a vision limitation in the RFC

Plaintiff next contends that the ALJ erred by failing to include any vision limitation in Plaintiff's RFC. Pl.'s Mot. 11-12. Plaintiff argues the ALJ was required to describe the functional consequences of a vision limitation, and that the ALJ's failure to include a vision limitation in the RFC was contrary to law. Pl.'s Mot. 11. As support, Plaintiff cites his history of proliferative diabetic retinopathy ("PDR"), problems with his right eye specifically, and "glassy view" following surgery. Pl.'s Mot. 11-12.

Here, as before, the ALJ discussed the evidence of Plaintiff's alleged eye impairment. AR 25-26. Initially, the ALJ determined Plaintiff's PDR was a non-severe impairment. AR 22. More specifically, the ALJ determined "the medical evidence fails to show that" Plaintiff's PDR "result[s] in more than minimal limitations on [Plaintiff's] ability to perform basic work activities." AR 22. In the RFC discussion, the ALJ expounded on this conclusion, citing Plaintiff's care at the UNM Health Sciences Center from June 30, 2015 to October 20, 2015. AR 25. In sum, the ALJ documented Plaintiff's early symptoms consistent with his claim of disability and later improvement following surgery. AR 25-26, 476-77. On October 6, 2015, Plaintiff reported he was doing better, with occasional glassy view, bright water spots, and

floaters. AR 26 (citing AR 480). Plaintiff's vision improved again between October 6 and October 20, though Plaintiff still reported cloudy vision. AR 26, 478.

Here again, the Court concludes that the ALJ supported his decision with substantial evidence. Plaintiff largely cites the same evidence relied on by the ALJ, just different portions of the same reports, in an attempt to attack the ALJ's decision as unsupported by substantial evidence. Simply put, the Court may not reweigh this evidence and substitute its judgment for the Commissioner's. The Court therefore finds the ALJ's decision to not include vision impairment in the RFC is supported by substantial evidence.

Plaintiff cites one unpublished Tenth Circuit case in support of his argument, *Norris v. Apfel*, 215 F.3d 1337, No. 99-6167, 2000 WL 504882 (10th Cir. Apr. 28, 2000) (unpublished Table disposition). In addition to being non-precedential, *see* 10th Cir. R. 32.1(a), *Norris* is distinguishable from these circumstances. In *Norris*, the claimant underwent corneal transplants in both eyes, and even after that suffered significant impairment. The claimant's best corrected vision in his left eye was 20/50 and his left pupil was large, irregular, and nonreactive, while his right eye's best corrected vision was worse than 20/200 and suffered strabismus, a condition potentially causing loss of vision or double vision. *Id*. at *3. Further, the claimant testified that he could only see movement in his right eye and it affected his ability to work around machines, perform heavy lifting, and do outdoor work. *Id*. The ALJ summarily concluded the claimant's vision was "impaired" without describing any practical implications of the limitation. *Id*. at *2. On review, the Tenth Circuit noted the ALJ is required to assess vision impairments under 20 C.F.R. §§ 404.1545(d) and 416.945(d), consider the claimant's impairments in combination under §§ 404.1520(a) and 416.920(a), and evaluate an individual's capacity to perform work-related tasks such as working with large or small objects, following instructions, or avoiding

20

hazards under Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *6 (July 2, 1996). *Id.* Given these requirements, the Tenth Circuit found the ALJ's failure to "address the impact of claimant's vision impairments on his ability to perform work functions . . . was error." *Id.*

In this case, the ALJ noted the evidence in the record regarding Plaintiff's vision impairment. AR 25-26. Plaintiff's uncorrected vision, as opposed to his corrected vision, was 20/60 in his left eye on August 14, 2015, and 20/100 in his right eye following surgery. AR 25-26. Plaintiff does not cite, nor has the Court found, any evidence in the record of other eye abnormalities such as those the claimant suffered in *Norris*. Although the ALJ did not ask Plaintiff about his eye problems at the hearing, Plaintiff's attorney did. AR 62-63. Plaintiff discussed his history of problems and surgeries and stated his right eye "cleared up" following surgery and he can see now, though he still sometimes sees spots and floaters. AR 62-63. In the end, the ALJ found Plaintiff's vision problems did not cause "more than minimal limitations" on Plaintiff's ability work. AR 22. Still, the ALJ limited Plaintiff to understanding simple instructions and avoiding more than occasional exposure to hazards such as extreme temperatures and unprotected heights. AR 23.

Comparing this case and *Norris* reveals several important differences. First, the objective examinations and measurements in the record show Plaintiff's *uncorrected* vision and eye impairments are far less severe than Norris's *corrected* vision and eye impairments, which the Tenth Circuit heavily emphasized. *Norris*, 2000 WL 504882 at *2-3. Unlike in *Norris*, the ALJ in this case actually discussed the medical evidence and functional consequences of Plaintiff's vision impairment; that he concluded it had no more than minimal effect does not change the fact that he considered and discussed the impairment. In stark contrast to *Norris*, Plaintiff testified his vision has cleared up, and Plaintiff has not offered evidence that his vision affects his ability to

read instructions or navigate a work site safely. Finally, the ALJ's exhaustive discussion of the medical evidence demonstrates he considered Plaintiff's impairments both alone and in combination. AR 23-32. For the foregoing reasons, the Court finds this case legally and factually distinct from *Norris*, that the ALJ supported his determination not to include a vision impairment with substantial evidence, and, therefore, that the ALJ committed no error in this regard.

### 3. Whether the ALJ erred by failing to include Dr. Rudnick's moderate limitations in the RFC

Third, Plaintiff contends the ALJ erred by not including Dr. Rudnick's moderate limitations in the RFC. Pl.'s Mot. 13-17. Plaintiff argues those moderate limitations are supported by other evidence in the record and attacks the substantiality of the medical evidence the ALJ cited. Pl.'s Mot. 13-17. The Commissioner counters that, here again, the ALJ was not required to adopt Dr. Rudnick's moderate limitations instead of his narrative conclusions, and that the evidence Plaintiff relies on does not warrant a more restrictive RFC. Def.'s Resp. 10.

In the first place, the Court agrees that Plaintiff's argument here is a rehash of his earlier argument that the ALJ erred by failing to adopt moderate limitations assessed by Dr. Rudnick. As explained *supra* in Section V.A., the ALJ was not required to adopt verbatim Dr. Rudnick's assessed moderate limitations if Dr. Rudnick explained those limitations in narrative form. *Supra* 14-17. Dr. Rudnick adequately explained Plaintiff's limitations in narrative form, and the ALJ incorporated those limitations in the RFC. As explicated above, that is all either were legally required to do.

Moreover, the Court finds the ALJ's determination of Plaintiff's mental limitations is supported by substantial evidence. Plaintiff again cites much of the same evidence the ALJ relied on, just different portions or language. *Compare* Pl.'s Mot. 13-17 *with* AR 27-30. For instance,

Plaintiff cites the diagnostic assessment from his first visit to Community Outreach Counseling, AR 360-65, which the ALJ recited in his opinion, AR 27. Plaintiff cites portions of the records from his psychiatric hospitalization, which the ALJ also thoroughly discussed. AR 27. Plaintiff emphasizes the negative findings, while the ALJ noted the positive findings as well, including that Plaintiff was fully oriented and cooperative and showed no abnormalities on discharge. AR 27. Both Plaintiff and the ALJ cite records of Plaintiff's mental health treatment throughout 2015. Pl.'s Mot. 16-17; AR 28, 30.[2] Plaintiff acknowledges the evidence that he improved with medication and had improved GAF scores, but he attempts to explain these away. Pl.'s Mot. 17. Importantly, the ALJ cited evidence of Plaintiff's improved condition, including GAF scores of 60 and eventually 65, indicating only mild symptoms. AR 28, 30. Accordingly, the Court finds the ALJ's findings here to be supported by substantial evidence. It is not the Court's place to reweigh the evidence or supplant the ALJ's judgment for its own, and Plaintiff has not shown that the ALJ's determination is overwhelmed by other evidence in the record.

### 4. Whether the ALJ erred by failing to take into account the combined effect of Plaintiff's limitations

Fourth, Plaintiff argues the ALJ failed to consider Plaintiff's impairments in combination with one another. Pl.'s Mot. 18. Plaintiff does not cite anything specifically showing the ALJ failed to do so; rather, Plaintiff raises the ALJ's obligation to do so and alleges he did not. Pl.'s Mot. 18. The Commissioner disputes Plaintiff's allegation as conclusory and reminds the Court that the general practice is to take a lower tribunal at its word when it says it considered a matter. Def.'s Resp. 11 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007).

Indeed, the regulations require ALJs to consider all of a claimant's impairments and their combined effect. 20 C.F.R. §§ 404.1523(c), 404.1545(e), 416.923(c), 416.945(e). However, the

___
[2] Plaintiff states these documents were authored by Bandon LaPrade, M.D., Pl.'s Mot. 16-17, while the ALJ refers to Swala K. Abrams, M.D., AR 28. Both names appear on the records. AR 593-95.

"general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *U.S. v. Kelley*, 359 F.3d 1302, 1304-05 (10th Cir. 2004)). Further, an ALJ's discussion of the evidence and reasoning may demonstrate he considered all of a claimant's impairments. *Flahterty*, 515 F.3d at 1071.

Just so in this case. At the outset, the ALJ noted his responsibility to consider all of Plaintiff's impairments, including those that are not severe. AR 20 (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945). At step two, the ALJ distinguished between Plaintiff's severe and nonsevere impairments. AR 21-22. At step three, the ALJ stated he considered Plaintiff's impairments, both alone and in combination, in determining whether they met or medically equaled a Listed impairment. AR 22-23. Finally, the ALJ's robust discussion and weighing at step four more than demonstrate the ALJ considered each of Plaintiff's impairments, both alone and in combination. AR 23-32. Plaintiff does no more than claim that his impairments combined render him unable to maintain employment. Pl.'s Mot. 18. The nearly nine full pages of analysis support the ALJ's determination that Plaintiff can.

### 5. Whether the ALJ erred by relying on improper factors in discounting Plaintiff's credibility

Fifth, Plaintiff contends the ALJ relied on improper factors by reasoning that Plaintiff's noncompliance with treatment, medications, and recommendations, and Plaintiff's daily activities were inconsistent with a claim of disability. Pl.'s Mot. 18-19. According to Plaintiff, the record fails to demonstrate the ALJ considered Plaintiff's justifiable reasons for being noncompliant. Pl.'s Reply 5.

Notably, Plaintiff does not cite any law supporting his contention that the factors the ALJ relied on – Plaintiff's non-compliance and daily activities – were in any way improper. To the

contrary, the Tenth Circuit has held an ALJ may consider a claimant's failure to take medication. *See Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000). Instead, Plaintiff quibbles with the ALJ's findings as unsupported by substantial evidence. Pl.'s Mot. 19. Plaintiff claims his periods of non-compliance were short-lived and he always had a reason, even if those reasons "may not have been objectively reasonable." Pl.'s Mot. 18. Further, Plaintiff claims his judgment was impaired by his mental impairments and "family indoctrination about conflict between religious beliefs and medications." Pl.'s Mot. 19. Lastly, Plaintiff states he could not perform chores for long; therefore, the ALJ's findings are unsupported by substantial evidence. Pl.'s Mot. 19.

The ALJ provided several reasons for discounting Plaintiff's credibility regarding his symptoms. First, the ALJ noted the numerous instances Plaintiff either stopped taking his medications or failed to follow up with treatment: even though he was referred to Community Outreach Counseling, Plaintiff did not return for outpatient counseling and medication management; when Plaintiff went to the ER in March 9, 2015, he reported not taking his medications because he did not like how they made him feel; and later in 2015 he stated he stopped taking his medications because he felt they were ineffective. AR 31. Although Plaintiff told examiners his family members do not believe in medications, AR 458, 470, nowhere in the record did Plaintiff say he stopped taking medications because of his family's religious views. Furthermore, in addition to Plaintiff's testimony about chores he performs, the ALJ discounted Plaintiff's credibility based on Ms. Romero's third party function report and Plaintiff's testimony that he worked part time for a hauling company and thought about returning to a job driving trailers. AR 30-31, 48-50, 334. So here again, Plaintiff has cited some evidence supporting his claim but has failed to show how the full range of evidence the ALJ relied on was not

substantial. Accordingly, the Court finds no error in the ALJ's reliance on Plaintiff's noncompliance and daily activities.

### C. Conflict between the DOT and the VE's testimony

Finally, Plaintiff once again alleges error relating to the limitations assessed by Dr. Rudnick. This time, Plaintiff argues Dr. Rudnick's limitation to understanding and applying "uncomplicated" instructions and the RFC's limitation to "simple" work preclude Plaintiff from performing the jobs the VE identified. Pl.'s Mot. 19-20. As described previously, Dr. Rudnick indicated Plaintiff is moderately limited in his ability to understand and remember detailed instructions but stated Plaintiff "can understand and remember uncomplicated instructions." AR 117. The ALJ translated that assessment into a limitation to understanding, remembering and carrying out "simple instructions." AR 23. The parties agree that ticket taker, marker, and office helper all require reasoning level-two as defined by the DOT. Pl.'s Mot. 19; Def.'s Resp. 12-15. The parties disagree, however, whether that creates a conflict between the DOT, RFC, and VE's testimony. Plaintiff relies on *Paulek v. Colvin*, 662 Fed. Appx. 588 (10th Cir. 2016) (unpublished), for his argument that they conflict, Pl.'s Mot. 20, while the Commissioner replies, in part, that they do not conflict under Tenth Circuit precedent, Def.'s Resp. 15.

A review of Tenth Circuit law confirms that, contrary to Plaintiff's argument, the Tenth Circuit has never held that a limitation to simple work conflicts with reasoning level-two as defined by the DOT. In *Hackett v. Barnhart*, the ALJ found the claimant retained the attention, concentration, persistence, and pace necessary for simple, routine tasks. 395 F.3d 1168, 1176 (10th Cir. 2005). The Tenth Circuit found that limitation "seems inconsistent with the demands of level-three reasoning," which requires "'apply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form'" and "'deal[ing] with problems

involving several concrete variables in or from standardized situations.'" *Id.* (quoting DOT, Vol. II at 1011). Rather, the Tenth Circuit said the claimant's limitation to simple and routine tasks "appears more consistent with" level-two reasoning, which involves applying commonsense understanding in carrying out detailed but uninvolved written or oral (but not diagrammatic) instructions and dealing with problems involving only a few (rather than several) concrete variables in or from standardized situations. *Id.* The Tenth Circuit reversed and remanded for the ALJ to "address the apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her." *Id.* at 1177.

*Paulek* merely applied *Hackett* to a nearly identical situation. The *Paulek* claimant was limited to understanding, remembering, and carrying out simple instructions, and found capable of performing his past relevant work as a service station attendant. 662 Fed. Appx. at 591. However, the DOT classified service station attendant as reasoning level-three. *Id.* at 594. The Tenth Circuit cited *Hackett*, noting a limitation to simple and routine tasks seems inconsistent with level-three reasoning, and reversed in order for the ALJ to "elicit a reasonable explanation how [the claimant] can perform two level-three-reasoning jobs with a limitation to carrying out simple instructions." *Id.* Thus, both *Hackett* and *Paulek* stand for the proposition that a limitation to simple instructions and tasks is inconsistent with level-three reasoning. Both cases involved jobs with level-three reasoning; neither involved level-two reasoning.

In its brief discussion, the *Paulek* panel also stated "[w]hile we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Id.* (citing *Lucy v. Chater*, 113 F.3d

905, 909 (8th Cir. 1997) (stating a limitation to simple instructions has an impact on capacity to perform a full range of sedentary work because "[m]any of the jobs listed require level two reasoning or higher in the unskilled sedentary job category")). But given the fact that *Paulek* involved jobs with level-three reasoning, not level two, this statement is clearly *dicta*, as it was unnecessary to the holding of the case. The *Paulek* court simply noted that while the Eighth Circuit has held that a limitation to simple instructions appears inconsistent with both level-two and level-three reasoning, the Tenth Circuit has not. *But see Gustafson v. Astrue*, No. 10-4962 (DSD/LIB), 2011 WL 6219641 at *6-7 (D. Minn. Nov. 29, 2011) (distinguishing *Lucy* and holding a limitation to simple, routine, and repetitive tasks "does not expressly conflict" with DOT reasoning level-two).

This distinction makes all the difference in this case. Plaintiff claims that reasoning level-two jobs are inconsistent with simple work. Pl.'s Mot. 20. But as just explained, the law in this Circuit, which this Court is bound to follow, does not support Plaintiff's argument. If anything, the Tenth Circuit disagrees, since the *Hackett* court stated a limitation to simple tasks is consistent with level-two reasoning. *Hackett*, 395 F.3d at 1176; *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (unpublished) (citing *Hackett* and reiterating that a limitation to simple work tasks is not inconsistent with level-two reasoning involving detailed but uninvolved instructions). In any case, the Court finds no inconsistency between Dr. Rudnick's limitation to "uncomplicated instructions," the ALJ's translation to "simple instructions," and the DOT's description of "detailed but uninvolved" instructions. To do so would "parse the ALJ's language too finely." *Carver v. Colvin*, 600 Fed. Appx. 616, 620 (10th Cir. 2015) (unpublished). Accordingly, the Court holds there is no conflict between the VE's testimony and DOT.

## VI.    CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 15] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*